**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

**UNITED STATES OF AMERICA,**

v.

**BASIL MOORE,**

        Defendant.

Case No. 7:11-CR-48 (HL)

**ORDER**

This case is before the Court on Defendant's Motion to Suppress Evidence (Doc. 16) and Defendant's Motion to Suppress Statements and Request for <u>Jackson v. Denno</u> Hearing (Doc. 17). An evidentiary hearing was held on March 30, 2012, after which the Court denied both motions from the bench. The reasons for that ruling are as follows.

**I.     MOTION TO SUPPRESS EVIDENCE**

    **A.     Factual Background[1]**

During the early morning hours of July 21, 2010, Corporal Hiram Cardona of the Colquitt County Sheriff's Office was on patrol when he saw a vehicle with a defective tag light. Cardona followed the vehicle, which was being driven by Defendant, for several blocks before activating his siren and blue lights to initiate a stop. Defendant did not immediately stop, but instead kept driving until he reached

---

[1] Corporal Cardona testified during the suppression hearing, and the factual background is taken directly from his testimony. The Court found Cpl. Cardona to be a credible witness.

the Shy Manor Apartments. Defendant pulled into a parking space and Cardona stopped his patrol car several feet behind Defendant's vehicle. The patrol car Cardona was driving did not have a video camera, so there is no video of the traffic stop.

Because of the time of day and the fact Defendant did not immediately stop, Cardona ordered Defendant to keep his hands where Cardona could see them. Cardona approached Defendant's vehicle, opened the driver's side door, and ordered Defendant to exit the vehicle. The driver's side window was up. Defendant appeared nervous. Cardona and Defendant walked to the back of Defendant's vehicle, leaving the driver's side door open. Cardona asked Defendant his age. Defendant said he was 12 years old. Cardona asked Defendant his age again, and Defendant responded that he was 8 years old.

Cardona asked to see Defendant's driver's license. Defendant gave Cardona consent to get the license out of his pocket, which Cardona did. After calling dispatch to run Defendant's license, Cardona walked back to Defendant's vehicle. As he approached the open driver's side door, he smelled the odor of burnt marijuana. Cardona has received training in identifying the smell of burnt marijuana. He shined his flashlight into the vehicle and saw the grip of a gun on the floor of the driver's side. Because there was a passenger still in the vehicle, Cardona removed the gun and put it in his patrol car. Cardona asked Defendant if the gun was his, but Defendant never responded.

After removing the gun, Cardona called dispatch to run the serial number of the gun. Cardona learned from dispatch that the gun had been reported stolen. Cardona arrested Defendant for possession of the firearm. Cardona searched Defendant and found a green medicine bottle in one of Defendant's pockets. The bottle contained what appeared to be narcotics. Defendant was placed in Cardona's patrol car, and a drug agent was called. It was later determined that the substance in the medicine bottle was cocaine.

## B.    Analysis

Defendant seeks to suppress all evidence obtained during the traffic stop. He does not challenge the initial stop, but contends that the stop was unreasonably prolonged and that there was no probable cause for Cardona to enter the vehicle. The Court disagrees.

An officer's investigation of a traffic stop is governed by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968). The Eleventh Circuit has held that the investigation must be "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003) (citing Terry, 392 U.S. at 20). The stop must be of "limited duration," and may not last "any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." Id. (citation omitted). The duration of the traffic stop "must be limited to the time necessary to effectuate the purpose of the stop." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001).

During a legal traffic stop, the officer has "the duty to investigate suspicious circumstances that then [come] to his attention." United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991) (citation omitted). The duration of a stop may be prolonged for the officer to examine a driver's license, run a computer check of the vehicle's registration, and to run a criminal history check. Boyce, 351 F.3d at 1106. Further, during a legal traffic stop, "officers . . . may take steps that are reasonably necessary to protect their personal safety . . . , including requiring the driver and passengers to exit the vehicle 'as a matter of course.'" United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009) (quoting Maryland v. Wilson, 519 U.S. 408, 410, 117 S.Ct. 882 (1997)); Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330 (1977). A traffic stop may last longer than the purpose of the stop would normally permit if an officer, based on specific facts and rational inferences drawn from those facts in light of his training and experience, has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring. United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999). In evaluating the validity of an investigative stop, the court must consider the totality of the circumstances. United States v. Simmons, 172 F.3d 775, 779 (11th Cir. 1999).

The evidence does not support Defendant's contention that the traffic stop was unreasonably prolonged. It does not appear from Cardona's testimony or Defendant's arguments that the stop lasted an unreasonable amount of time. After Defendant finally stopped driving, Cardona opened the door, asked Defendant to exit the vehicle, asked him some questions, ran his license, and looked into Defendant's

vehicle, at which point he saw the gun in plain view. From the evidence presented, the traffic stop appears to have been a rather straightforward one which was reasonable in duration.

The Court also rejects Defendant's probable cause argument. Contrary to Defendant's contention, Cardona did not use the smell of marijuana to create probable cause to enter Defendant's vehicle and search it. Instead, Cardona simply saw the gun in plain view on the floor of the vehicle. A warrantless seizure of a firearm under those circumstances does not violate any constitutional rights. *See* United States v. Miller, 156 Fed. Appx. 281, 289 (11th Cir. 2005) (holding that the seizure of firearms was justified under the plain view doctrine where agents seized weapons after seeing them, through the open door of the vehicle, in plain view on the floor); *see also* United States v. Henley, 469 U.S. 221, 235, 105 S.Ct. 675 (1985) (evidence that is in plain view may be used to support a subsequent arrest); United States v. Desir, 257 F.3d 1233, 1236 (11th Cir. 2001) (motion to suppress denied under plain view doctrine as crack cocaine was in plain view when the officer shined his flashlight through the windshield of the defendant's car).

## II. MOTION TO SUPPRESS STATEMENTS

Defendant seeks to suppress statements made to law enforcement officials during two interviews conducted on July 3, 2010 in connection with the shooting of Alvin Hunt. During the first interview, which took place at the Shy Manor Apartments, Defendant stated that he was not at the apartment complex at the time of the shooting. During the second interview, which was at the Moultrie Police Department,

Defendant stated that he was at the complex when the shooting occurred. The parties stipulated during the hearing that Defendant was not in custody during either interview, so the only question for the Court is whether Defendant's statements were voluntary.[2]

Determining whether a statement is voluntary depends on whether, under all of the surrounding circumstances, the statement was the product of the accused's "free and rational" choice. United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994). The issue of voluntariness is determined by the totality of the circumstances. Arizona v. Fulminate, 499 U.S. 279, 285-88, 111 S.Ct. 1246 (1991). The Eleventh Circuit has stated: "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. Isolated incidents of police deception, and discussions of realistic penalties for cooperative and non-cooperative defendants, are normally insufficient to preclude free choice." Jones, 32 F.3d at 1517 (quotation omitted).

The totality of the circumstances shows that Defendant's statements were made voluntarily. There was no evidence presented of a threat or use of physical

---

[2] In Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774 (1964), the Supreme Court held that when a defendant objects to the introduction of his statement as involuntary, due process requires the trial court to make an independent determination that the statement was voluntary before it may be heard by the jury. A two-part inquiry determines the admissibility of a self-incriminating statement. First, the court must consider whether the Government complied with the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966). Second, if the Government met the requirements, the court must consider whether the statement was voluntary. United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994).

force, or of an unusually long interrogation. The officers did not pull their weapons on Defendant, and there was no evidence that the officers exerted any improper influence over Defendant in order to obtain his statements. Defendant argues that the statements were involuntary because he was distraught over the death of Mr. Hunt, but in the Court's opinion, Defendant did not appear particularly distraught during the second interview, which was taped and shown during the suppression hearing. In any event, being distraught, on its own, will not invalidate a statement. *See* <u>Corn v. Zant</u>, 708 F.2d 549, 567 (11th Cir. 1983), *vacated in part on other grounds*, 772 F.2d 681 (11th Cir. 1985) (holding that "mere emotionalism and confusion do not necessarily invalidate" statements or confessions); *see also* <u>McMillon v. Culley</u>, 380 Fed. Appx. 63, 67 n. 3 (2d Cir. 2010) (rejecting argument that confession was not voluntary because the defendant was a vulnerable 18-year-old distraught after his mother's death); <u>United States v. Caldwell</u>, 954 F.2d 496, 504 (8th Cir. 1992) (finding that even though defendant was upset and nervous when he confessed, there was no evidence that the police engaged in conduct rising to the level of coercion).

## III.   CONCLUSION

For the reasons discussed above, Defendant's Motion to Suppress Evidence (Doc. 16) and Defendant's Motion to Suppress Statements (Doc. 17) are both denied. This case will be tried during the April term of court, which begins on April 9, 2012.

**SO ORDERED**, this the 2nd day of April, 2012.

s/ Hugh Lawson
**HUGH LAWSON, SENIOR JUDGE**

mbh